# D. D. McINNIS v. NATIONAL CASUALTY COMPANY.[1]

January 6, 1911.

Nos. 16,791—(150).

**Partnership — contract not ambiguous.**

> Action to recover from the defendant upon a contract between the parties whereby the defendant agreed to pay to the plaintiff $1,000 in consideration of his retiring from a copartnership which was state manager of its casualty business. *Held,* construing the documentary evidence referred to in the opinion, that it was not ambiguous in its terms, that the evidence was sufficient to sustain a verdict for the plaintiff, and that the trial court did not err, either in its rulings as to the admission of evidence or in its charge to the jury.

Action in the district court for Hennepin county to recover $1,000, in accordance with the terms of a certain contract. The answer denied the allegations of the complaint, and set up that if any such agreement was made by defendant, it was without consideration; set out the written agreement contained in the opinion, and alleged that defendant indorsed its approval thereon but was not a party to it, and there was no consideration for its approval. The reply was a general denial. The case was tried before Simpson, J., and a jury which returned a verdict in favor of plaintiff for $1,034. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Einar Hoidale, H. L. Hoidale,* and *Henry C. Walters,* for appellant.

*Arthur Christofferson* and *J. A. A. Burnquist,* for respondent.

START, C. J.

This action was brought in the district court of the county of Hennepin to recover from the defendant $1,000. The complaint alleged in effect that the defendant was a corporation, and that on

[1] Reported in 129 N. W. 125, 388.

April 22, 1909, the defendant entered into a contract with plaintiff to pay him $1,000 in consideration of his retiring from the agency of Barnes & McInnis, as state managers of the defendant, and that he did so retire. The answer admitted that the defendant was a corporation, denied the other allegations of the complaint, and affirmatively alleged that, if the agreement alleged in the complaint was in fact entered into, there was no consideration therefor, and, further, what the terms of the alleged agreement were, as it was informed and believed. There was a verdict for the plaintiff for the amount claimed. The defendant appealed from an order denying its blended motion for judgment notwithstanding the verdict or for a new trial.

The assignments of error raise the questions whether the verdict is sustained by the evidence and whether the trial court erred in its rulings as to the admission of evidence or in its charge to the jury.

There was evidence tending to show the following facts:

The plaintiff and G. W. Barnes were partners under the firm name of Barnes & McInnis, having their place of business at Minneapolis, and as such were the state managers of the defendant's casualty insurance business. The plaintiff had been, for some thirteen years prior to entering the defendant's services, engaged in casualty insurance business as an officer of a company whose business the defendant reinsured. On February 27, 1909, the parties entered into a written agreement (Exhibit C), the here material provisions of which are as follows:

"Any time on or after June 1, 1909, should either party desire to retire from the agency of Barnes & McInnis, state managers of the National Casualty Company of Detroit, such retirement shall be subject to the following conditions:

1. Such retirement to be fully concurred in by the remaining party.

2. That such retirement shall be concurred in by the National Casualty Co.

3. That the agency name, Barnes & McInnis, shall remain unchanged for a period not to exceed six months from date of retire-

ment of either party, subject, however, to change at the option of the remaining party.

4. That said retiring partner shall give at least thirty (30) days' notice of intention to retire to said remaining partner and said company.

5. That said retiring partner agrees not to engage in the business of casualty insurance within Minnesota for a period of not less than six (6) months from consummation of this agreement.

6. That said retiring partner agrees to accept from said National Casualty Co. the sum of $1,000.   *   *   *   Same to be in full settlement of all equitable claims said retiring partner may have against or hold in said agency, or the business by it controlled.

7. Said parties agree that, in event of incompatibility and disagreement that said company shall nominate which party shall retire, and that such decision by said company shall be final.

8. Said parties agree that should either party to said agency die during the pendency of this agreement, that the equitable value of the interest of said deceased shall be $1,000, payable as hereinbefore stated, and said payments shall constitute full settlement of all claims or interest in or against said agency or the National Casualty Co."

This agreement was signed by each of the partners.   Then followed immediately below their signatures this provision, "Approved and accepted this 27th day of February, 1909," which was signed by the vice president and manager of agencies for the defendant, whose authority to represent the defendant was conceded.[1]

On April 15, 1909, the vice president of the defendant saw the plaintiff, and told him the company did not want Barnes to resign from the agency, and wanted him to stay, and that, in view of the fact that he and the plaintiff did not get on well together, and that the plaintiff was going to leave the service June 1 he would like to have him leave at once.   The plaintiff replied that the company could have his resignation if it would take care of him and his contract.   Thereupon, and on April 17, he wrote a letter (Exhibit A) which was to the effect following:

"At your request I herewith tender my resignation as a member of

[1]See opinion on page 161.

the firm of Barnes & McInnis Agency, providing, however, that the company will agree to take care of my interests the same as if I continued with them up to the first of June. The memorandum or agreement [Exhibit C] entered into between yourself, Mr. Barnes, and myself, dated February 27th, to be carried out the same as originally intended and the same salary that I now receive to be continued up to June first.

In view of the fact that I am willing to continue as agreed up to June first, it seems to me that my position is fair, and when my resignation is accepted, you can rest assured that, in leaving the services of the company you will receive nothing in return but my hearty support and best wishes."

The vice president answered in writing to this effect:

"I am in receipt of your resignation as one of our Northwestern managers, and regret that you are severing your connections. * * * I appreciate your attitude toward the company and the Northwestern Department. I could not have entertained any other idea of what your attitude would be. Your proposition relative the May salary is fair, and will be agreed to. Other payments as per contract will, of course, be remitted promptly."

The plaintiff retired from the agency in accordance with his resignation. The testimony of the plaintiff was contradicted in some important particulars by that of the vice president. The trial court submitted to the jury the question whether there was an agreement between the parties to the effect that, if the plaintiff retired from the agency before June first, as requested, he should be paid $1,000, as provided by the contract of February 27. (Exhibit C.) The defendant contends that the evidence was not sufficient to sustain the finding that such contract was made, and especially that no consideration was shown for such alleged agreement.

The record does not justify the claim. The documentary evidence must be construed as a whole, and with reference to the undisputed relations of all the parties to each other. So construing them, the contract of February 27 (Exhibit C) is clear and definite. The subject-matter of the contract was the defendant's agency and business which was conducted for it by the partners, and the protection of the

business in case one of the partners should, on or after June 1, retire. The business was protected by making such retirement conditioned upon the defendant's concurrence, and the giving to it the right to say, in case of disagreement, which one of the partners should retire, and by a covenant on the part of the retiring partner not to engage in the casualty business in Minnesota for six months thereafter. In consideration of these stipulations the retiring partner agreed to accept from the defendant $1,000 in full settlement of all claims against the agency or business by it controlled. The defendant's acceptance and approval, which was a part of the contract, necessarily refer to the provisions of the contract we have indicated.

It is true, as urged by defendant, that by the terms of this contract it was not obliged to pay the retiring partner anything unless he retired on or after June first. This brings us to the question whether the date of retirement was changed by an agreement based upon a valuable consideration. We are of the opinion that there was such a contract, for the evidence is sufficient to sustain a finding that the defendant desired that the plaintiff should retire before June first and requested him to do so, and that he assented upon the express condition that he should have the same rights under Exhibit C as he would have if he continued in defendant's service to June first. The defendant assented to the condition, and in consideration thereof the plaintiff did retire as requested. The retirement of the plaintiff before June first was a sufficient consideration for the promise of the defendant. We hold that this modification of the original contract was based upon a valid consideration, and was established by a clear preponderance of the evidence.

The next group of assignments of error relate to alleged errors of the trial court in rejecting defendant's offer to show by oral evidence what the parties intended by Exhibit C. There were a number of rulings along this line, but they were all summed up in this offer: "Defendant offers to prove that the words: 'Approved and accepted this 27th day of February, 1909. National Casualty Company, by W. G. Curtis, Vice President'—were understood by all the parties to mean simply that the National Casualty Company approved of the arrangement between G. W. Barnes and D. D. McInnis, and accepted

the trust imposed upon it under the terms of the arrangement, and the further understanding that it involved no primary obligation on the part of the defendant."

The defendant claims that this case falls within the rule that, where ambiguous words or terms are used in a written contract, it is proper to show in what sense they were understood by the parties. Reeves & Co. v. Cress, 80 Minn. 466, 83 N. W. 443. The contract in this case is, in form, awkward; but there is no ambiguity in the words used by the parties to express their intentions. The trial court correctly rejected the offered evidence.

Other rulings on the admission of evidence are here urged, which we have considered, and find no reversible error therein.

The defendant further claims that the court erred in charging the jury that plaintiff could sufficiently prove the modified agreement by a fair preponderance of evidence. This was not error. The court properly refused to give the defendant's requested instruction, to the effect that, in order to show a modification of Exhibit C, it was not sufficient for the plaintiff to prove ambiguous transactions, from which the defendant might have inferred that the original contract was still in force; for the request rested upon an assumption of ambiguity not justified by the evidence.

Order affirmed.

SIMPSON, J., took no part.

On January 20, 1911, the following opinion was filed:

PER CURIAM:

The appellant in a petition for a reargument calls our attention to a mistake in the opinion in the name of its manager of agencies. It was assumed, inadvertently, by reason of a similiarity of names, that the vice president, whose authority in the premises was conceded, and the manager of agencies, were one and the same person. In fact, the name of the vice president was W. G. Curtis, and the manager of agencies was his brother, H. G. Curtis.

The mistake, however, in no manner affects the conclusion reached

by the court; for the fact remains that the evidence is ample to sustain a finding that the manager of agencies requested the resignation of the plaintiff, and that the plaintiff replied that the company could have his resignation if it would protect him and his contract.    It is also true that the manager of agencies denied this, and testified that he had no authority to demand the resignation or to make the plaintiff any promises; but he also testified that he was sent by the company to patch a peace between the partners, and that he had an interview with the plaintiff.    The record does not show that the plaintiff had any notice of any limitation of the general authority of the manager of agencies.    But, this aside, the record is conclusive that the plaintiff's letter of resignation (Exhibit A) referred to in the opinion was directed to the vice president, and not to the manager, and was answered by the vice president to the effect stated in the opinion.

Petition denied.


JAGGARD, J., took no part.